UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

WILLIAM E. SCHELL
CATHERINE P SCHELL

    Plaintiff,

V                                      CIVIL ACTION NO.

JIFFY HITCH, TRAILER AND
SUPPLY COMPANY IV
DBA TRIALGLE OUTDOOR WORLD    **JURY TRIAL**
RA Gregory Trepetin
    1501 E. Patrick Street
    Frederick, MD 21701

ALLY FINANCIAL, INC.

    Defendants.

## COMPLAINT

### INTRODUCTION

1. This is an action for damages for violation of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.,* and for violation of the Md. Ann. Code <u>Commercial Law</u> Consumer Practices Act § 13-105 *et seq.*, and deceit by non-disclosure or concealment, and negligent misrepresentation.

    Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1367.

3. Plaintiffs are residents of the town of New Windsor, Carroll County and State

of Maryland.

4. Defendant Jiffy Hitch Trailer & Supply Company IV, hereinafter referred to as ("Jiffy") is a domestic corporation doing business with a place of business at 1501 E. Patrick Street, Frederick, MD 21701 and doing business under the trade name of Triangle Outdoor World.

5. Defendant Ally Financial, Inc., hereinafter referred to as ("Ally") is a foreign corporation authorized by the Secretary of State to do business in Maryland.

## COUNT I – VIOLATION OF THE TRUTH IN LENDING ACT

6. At all time herein both Defendants in the ordinary course of business regularly extends consumer credit that is payable in more than four installments.

7. Jiffy is a creditor within the meaning of 15 U.S.C. § 1601, et seq., and the regulations promulgated there-under.

8. Alley is the assignee of the Retail Install Sales Contract – Simple Finance Charge ("RISC") and pursuant to the Contract "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOOD OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PRECEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." Exhibit 1.

9. On or about May 11, 2012, Plaintiffs entered into a consumer credit transaction with Jiffy to purchase a new 2012 Dutchman Komfort camper (trailer), VIN

47CFKMS21CP628069 ("The Vehicle or Vehicle") for personal, family or household use.

10. Jiffy failed to provide accurate closed-end disclosures as required by 12 C.F.R. § 226.18 and the regulations there-under at or after consummation of the transaction.

11. Jiffy failed to disclose the name of the party that was paid for the Service Contract in violation of Reg. Z § 226.18(c)(iii).

12. Jiffy stated on the Retail Installment Sales Contract ("RISC") that Plaintiffs made a cash down payment of $3,100.00 when in fact Plaintiffs made a cash down payment of $100.00.

13. Plaintiffs question that fact that the down payment was a bogus number by $3,000.00 and Jiffy's salesperson/agent responded that they do this all the time to make the contract happen with the banks.

14. Since the representation of the down payment was falsely disclosed by Jiffy in the sum of $3,000.00 and not actually paid by the Plaintiffs the amount financed should have been reduced by $3,000.00, therefore, the amount financed was inaccurately disclosed.

15. Since the amount of the down payment was inaccurately disclosed by Jiffy in the sum of $3,000.00, plaintiffs were overcharged for Maryland sales tax in the sum of $180.00.

16. Once the amount financed was reduced as it was improperly disclosed, then, the Annual Finance Charge (APR) increased and the APR was inaccurately disclosed by

Jiffy.

17. Based on information and belief Jiffy charged Plaintiffs a fee far greater than the sum that was paid to Public Officials.

18. Based on information and belief Jiffy charged Plaintiffs a fee for freight that was greater than the cost of shipping.

19. Prior to signing the RISC contract, Jiffy's salesperson/agent provided Plaintiffs Exhibit 2, dated May 7, 2012 stating the cash price of The Vehicle was $45,387.00 and they would allow them $4,000.00 on their trade-in for their 1998 trailer.

20. On May 11, 2012 Plaintiffs were provided by Jiffy's salesperson/agent a Bill of Sale stating the price of unit was $48,387.00 plus sales tax. Exhibit 3.

21. In the RISC the cash price including tax was stated as $52,023.16.

22. Plaintiffs have suffered an undetermined amount of monetary damages against Defendant Jiffy and Defendant Ally as the Holder of the Consumer Contract.

## COUNT II-ACTION FOR DECEIT BY NON-DISCLOSURE OR CONCEALMENT

23. The allegations contained in ¶ 1 through ¶ 22 above are repeated as if fully set forth herein.

24. On or about May 11, 2012, Plaintiffs traveled to Defendant Jiffy's place of business in Frederick Maryland to purchase a new fifth wheel camp trailer.

25. Plaintiffs were seriously interested in purchasing a 2012 Komfort 3230 FRK fifth wheel camper, The Vehicle, and inquired from Defendant Jiffy's salesman/agent the price. The salesman/agent said or words to that effect that he would go inside and speak

to the manager and see what the trailer was being advertised for.

26. Defendant Jiffy's salesman/agent returned and said that the advertised price was $46,387.00 however, that the manager would reduce the price another one thousand dollars to $45,387.00 as the MSRP was $63,000.00.

27. Based on Jiffy's representation to Plaintiffs as to the advertised price of The Vehicle that it would sell for $45,387.00 they entered into a contract of sale at that price less $1,000.00 and an allowance of $2,750.00 for a trade-in and a $100 deposit.

28. Jiffy's representation that the trailer in question, known as a 2012 Komfort 3230 FRK fifth wheel, The Vehicle, was advertised for $46,387.00 and was being reduced to $45,387.00, was a false representation of a material fact made to plaintiffs as the true advertised price was $38,450.00. See Exhibit 4.

29. A short while after plaintiffs purchased The Vehicle they encountered warranty issues and began researching information on The Vehicle. Plaintiffs discovered that Jiffy had been advertising The Vehicle, with the same VIN, on the Internet for sale at $38,450.00 and Jiffy intentionally concealed this information from Plaintiffs. Exhibit 4.

30. Jiffy knew that the representation of $46,387.00 plus MD sales tax as the advertised price of The Vehicle on May 11, 2012 was false, or the representation was made with such reckless disregard for the truth that the knowledge of the falsity of that statement can be imputed to Jiffy.

31. Jiffy made the false representation for the purpose of defrauding plaintiffs of the difference between $38,450.00 (the advertised Internet) and the unit price of

$48,387 stated on the Bill of Sale, Exhibit 3, plus 6% MD sales tax.

32. Plaintiffs relied with justification on Jiffy's misrepresentation and they suffered damages as a direct result of the reliance upon the misrepresentation. WHEREFORE, Plaintiffs demands judgment against Defendant Jiffy for damages in the sum of $10,000.00, plus overcharge on the MD sales tax and against Defendant Alley as the Holder of the Consumer Contract plus costs, interest and reasonable attorney fees.

## COUNT III – ACTION FOR NEGLIGENT MISREPRESENTATION

33. The allegations contained in ¶ 1 through ¶ 32 above are repeated as if fully set forth herein.

34. On or about May 11, 2012, Plaintiffs traveled to Defendant Jiffy's place of business in Frederick Maryland to purchase a new fifth wheel camp trailer.

35. Plaintiffs were seriously interested in purchasing a 2012 Komfort 3230 FRK fifth wheel camper, The Vehicle, and inquired from Defendant Jiffy's salesman/agent the price. The salesman or agent said or words to that effect that he would go inside and speak to the manager and see what the trailer was being advertised for.

36. Defendant Jiffy's salesman/agent returned and said that the price was advertised at $46,387.00 however, the manager would reduce the price another one thousand dollars to $45,387.00 as the MSRP was $63,000.00. Jiffy's had a duty of care to Plaintiffs. The duty required the transmittal of accurate information from Jiffy to Plaintiffs.

37. Based on Jiffy's representation that the asking price of The Vehicle was $45,387.00, Plaintiffs' entered into a contract for sale at the aforesaid price less an allowance for a trade-in of $2,750.00 and a $100.00 down payment.

38. Jiffy's representation through its agents that The Vehicle in question, was advertised at $46,387.00 and now being reduced to $45,387.00 was a negligent assertion of these false statements by it employees or agents representations as The Vehicle was advertised for $38,450.00, see Exhibit 4.

39. A short while after plaintiffs purchased The Vehicle they encountered warranty issues and began researching information on The Vehicle. Plaintiffs discovered that Jiffy had been advertising The Vehicle, with the same VIN, on the Internet for sale at $38,450.00 and was negligent in concealed this information from Plaintiffs.

40. Jiffy knew that the representation of $46,387.00 as the advertised price of The Vehicle on May 11, 2012 was false, and made with the intention of having Plaintiffs act and rely upon Jiffy's negligent assertions.

41. Jiffy's salesperson/agents knew that Plaintiffs would probably rely upon and Plaintiffs did in fact, relying upon Jiffy's negligent statements and that Plaintiffs would incur damages.

42. Plaintiffs action of borrowing funds, and entering into a purchase were accomplished in reliance upon Jiffy's employee/ agents statements, and Plaintiffs were justified in their reliance because of the many conversations they had with Jiffy.

WHEREFORE, Plaintiffs demands judgment against Defendant Jiffy and Defendant Ally

as Holder of the Consumer Contract in the sum of $10,000.00. and sales tax, interest, costs and reasonable attorney fees.

## COUNT IV – VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT

43. The allegations of ¶ 1 though paragraph ¶ 42 are repeated as if fully set forth herein.

44. Jiffy is a "merchant" within the meaning of § 13-101(g) as one who "directly or indirectly either offers or makes available to consumer any consumer goods . . . ." *Hogan v. The Maryland State Dental Association* 843 A.2d 902, 906 (Court of Special Appeals March 8, 2004). Plaintiffs purchased The Vehicle for personal, family or household use.

45. Plaintiffs are consumers within the meaning of the Act as defined as "an actual or perspective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit" COMM LAW II §13-101 (c).

46. Defendant Jiffy committed several unfair and deceptive trade practices plus various misstatements in violation of the Consumer Protection Act during the purchase of The Vehicle in violation of ("CPA") Comm. Law, § 13-101(g), and is subject to all of the CPA's provisions prohibiting unfair or deceptive trade practices including those in Md. Code Ann., Comm. Law §§ 13-303 and 13-301.

47. Plaintiffs allege that Jiffy is liable for its salesman/agent false representation. *Mercedes-Benz of N. Am., Inc. v. Garten,* 94 Md. App. 547, 618 A.2nd 233 (1993).

48. Plaintiffs relied upon the misrepresentations of Jiffy's salesperson/agent when they were told that the reason the RISC showed a bogus $3,000 down payment and Plaintiffs were overcharged $180.00 for MD sales tax was that Jiffy does it all the time to make it happen.

49. Plaintiffs relied upon the misrepresentations of Jiffy's salesperson/agent when they were told that that the advertised price on The Vehicle was $46,387.00 and that the manager would reduce the price to $45, 387.00, when in fact The Vehicle was advertised on the Internet for sale for a price of $38,450.00.

50. Jiffy's salesperson/agent statement that The Vehicle was advertised at $46,387.00 was a false representation of a material fact, Exhibit 4.

51. Jiffy's false representation of the advertised price of The Vehicle was intentionally concealed from Plaintiffs.

52. Jiffy's false representation of the advertised price was known to at the time it was made to Plaintiffs or the representation was made with such reckless disregard for the truth that the knowledge of the falsity of that statement can be imputed to Jiffy.

53. Jiffy made the false representation for the purpose of defrauding Plaintiffs of the difference between $38,450.00 and the cash price of $45,387.00 plus sales tax.

54. Based on information and belief, Jiffy's salesperson/agent overcharged Plaintiffs a greater fee for the cost of shipping than Jiffy was charged.

55. Based on information and belief, Jiffy's salesperson/agent overcharged Plaintiffs a greater fee for monies paid to public officials than it paid to public officials.

56. Plaintiffs' demands judgment against Defendant Jiffy and Defendant Ally, as the Holder of the Consumer Contract for compensatory damages of $11,000.00, costs and reasonable attorney fees on this Count.

WHEREFORE, Plaintiffs seeks the following;

1. Award Plaintiffs statutory damages actual damages, costs and attorney fees as set forth in Court I.

2. Award Plaintiffs actual damages, costs and attorney fees as set forth in Count II.

3. Award Plaintiffs actual damages, costs and attorney fees as set forth in Count III.

4. Award Plaintiffs compensatory, costs and attorney fees as set forth in Count IV.

5. Award Plaintiffs such other or further relief as the Court deems just.

BY /S/ *[signature]*
Bernard T. Kennedy, Esquire
163Mitchells Chance Rd. #244
Edgewater, MD 21037
Fed. Bar #MD26843
Ph (443) 607-8901
Fax (443) 607-8903
bernardtkennedy@yahoo.com
COUNSEL FOR THE PLAINTIFFS

# SIMPLE FINANCE CHARGE

Dealer Number _____ Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| [illegible] SCHELL 13709 ROOP ROAD NEW WINDSOR, MD 21776 | CATHERINE P SCHELL 13709 ROOP ROAD NEW WINDSOR, MD 21776 | [illegible] 150 E Patrick St Frederick, MD 21701 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| New | 2013 | [illegible] | 47CFK[illegible] | ☐ personal, family or household ☐ business ☐ agricultural ☐ _____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $[illegible] is |
|---|---|---|---|---|
| [illegible] % | $ 22,151.44 | $ 49,591.16 | $ 71,742.60 | $ 77,[illegible] |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| [illegible] | [illegible] | Monthly beginning 6/02/2013 |

Or As Follows: _____

Late Charge. If payment is not received in full within __15__ days after it is due, you will pay a late charge of __10__% of the part of the payment that is late, with a minimum charge of $ __5__.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1 Cash Price
  A Cash Price of Motor Vehicle (including accessories, services, and taxes) $ [illegible] (A)
  B Dealer Processing Charge (not required by law) $ 149.00 (B)
  C Freight Charge $ [illegible] (C)
  D Other $ N/A (D)
    To Whom Paid _____
  E Other $ N/A (E)
    To Whom Paid _____
  Total Cash Price $ [illegible] (1)
2 Total Downpayment =
  Trade-in [illegible] SHADOW CRUISER 255RK (5th Wheel)
    (Year)   (Make)   (Model)
  Gross Trade-In Allowance $ [illegible]
  Less Pay Off Made By Seller $ 0.00
  Equals Net Trade In $ [illegible]
  + Cash $ [illegible]
  + Other $ N/A
  (If total downpayment is negative, enter "0" and see 4I below) $ [illegible] (2)
3 Unpaid Balance of Cash Price (1 minus 2) $ [illegible] (3)
4 Other Charges Including Amounts Paid to Others on Your Behalf
  (Seller may keep part of these amounts):
  A Cost of Optional Credit Insurance Paid to Insurance Company or Companies:
    Life $

### Insurance.
You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
### Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)
Premium:
  Credit Life $ _____ N/A
  Credit Disability $ _____ N/A
Insurance Company Name _____ N/A
_____ N/A
Home Office Address _____ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance or credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment [illegible] is shown below.

**PLAINTIFF'S EXHIBIT # 1**

☐ _____
  Type of Insurance       Term
Premium $ _____ N/A
Insurance Company Name _____ N/A
Home Office Address _____ N/A

☐ _____
  Type of Insurance       Term
Premium $ _____ N/A
Insurance Company Name _____ N/A

|   |   |   |   |
|---|---|---|---|
| | Paid to Insurance Company | $ | |
| C | Other Optional Insurance Paid to Insurance Company or Companies | $ | N/A |
| D | Official Fees Paid to Government Agencies | $ | N/A |
| E | Government Taxes Not Included in Cash Price | $ | N/A |
| F | Government License and/or Registration Fees | $ | N/A |
| G | Government Certificate of Title Fees (includes $ _____ security interest recording fee) | $ | |
| H | Optional Gap Contract | $ | 0.00 |
| I | Other Charges (Seller must identify who is paid and describe purpose) | | |
| | to _____ for Prior Credit or Lease Balance | $ | N/A |
| | to _____ for Service Contract | $ | 2,400.00 |
| | to _____ for Tire Protection | $ | 0.00 |
| | to _____ for Roadside Assistance | $ | 0.00 |
| | to _____ for Paint Protection | $ | 0.00 |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | $ _____ (4) | |
| 5 | Amount Financed (3 + 4) | $ _____ (5) | |

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ _____ and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____, Year _____. SELLER'S INITIALS _____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____ _____
Buyer Signature                Date

X _____ _____
Co-Buyer Signature             Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

Returned Check Charge: You agree to pay a charge of $ 15.00 if any check you give us is dishonored on the second presentment.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4H of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ Mos.
_____
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

## NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract, along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract: (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding. Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.
Buyer Signs X _____ Date 5-11-12 Co-Buyer Signs X _____ Date 5-11-12
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Address _____
Seller signs _____ Date 5-11-12 By X Steve Shapiro Title V.P.

Seller assigns its interest in this contract to _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse
Seller _____ By Steve Shapiro Title V.P.

LAW FORM NO. 553-MD (REV. 4/06) U.S. PATENT NO. D480,762
©2006 The Reynolds and Reynolds Company TO ORDER: www.reysource.com, 1-800-344-0996, fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER COPY

OTHER IMPORTANT

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods installed in it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may

If you pay late, we may also take the steps described belo

   b. **You may have to pay all you owe at once.** If y break your promises (default), we may demand that y pay all you owe on this contract at once, subject to any rig the law gives you to reinstate this contract. Default mear
      - You do not pay any payment on time;
      - You give false, incomplete, or misleading informati on a credit application;
      - You start a proceeding in bankruptcy or one started against you or your property; or
      - You break any agreements in this contract.
      The amount you will owe will be the unpaid part of t Amount Financed plus the earned and unpaid part of t Finance Charge, any late charges, and any amounts d because you defaulted.
   c. **You may have to pay collection costs.** If we hire attorney to collect what you owe, you will pay the attorne reasonable fee, as the law allows. You will also pay a court and collection costs we incur as the law allows.
   d. **We may take the vehicle from you.** If you default, v may take (repossess) the vehicle from you if we do peacefully and the law allows it. We may repossess t vehicle with or without resort to judicial process. If yo vehicle has an electronic tracking device, you agree that v may use the device to find the vehicle. If we take t vehicle, any accessories, equipment, and replaceme parts will stay with the vehicle. If any personal items are the vehicle, we may store them for you at your expense. you do not ask for these items back, we may dispose them as the law allows.
   e. **How you can get the vehicle back if we take it.** If w repossess the vehicle, in many situations, the law give you the right to pay to get it back. We will tell you what yc have to do to get the vehicle back.
   f. **We will sell the vehicle if you do not get it back.** If yc do not do what is required to get the vehicle back, we w sell the vehicle. We will send you a written notice of sa before selling the vehicle.
      We will apply the money from the sale, less allowe expenses, to the amount you owe. Allowed expenses ar expenses we pay as a direct result of taking the vehicle holding it, preparing it for sale, and selling it as the la allows. Attorney fees and court costs the law permits ar also allowed expenses. If any money is left (surplus), w will pay it to you unless the law requires us to pay it t someone else. If money from the sale is not enough to pa the amount you owe, you must pay the rest to us unless th law provides otherwise. If you do not pay this amount whe we ask, we may charge you interest at a rate not exceedin the highest lawful rate until you pay.
   g. **What we may do about optional insurance, mainte nance, service, or other contracts.** This contract ma contain charges for optional insurance, maintenance service, or other contracts. If we demand that you pay a you owe at once or we repossess the vehicle, we may clair benefits under these contracts and cancel them to obtair refunds of unearned charges to reduce what you owe c repair the vehicle. If the vehicle is a total loss because it i confiscated, damaged, or stolen, we may claim benefit under these contracts and cancel them to obtain refunds c unearned charges to reduce what you owe.

pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

2. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we may subtract the refund from what you owe.

F YOU PAY LATE OR BREAK YOUR OTHER PROMISES

1. You may owe late charges. If a payment is not received in full within 15 days after it is due, you will pay a late charge of 10% of the part of the payment that is late, with a minimum charge of $5. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

primarily for personal, family, or household use.

Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **Applicable Law** Federal law and Maryland law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code.

ICE TO BUYER(S) OF NEW VEHICLES: IF YOU ARE PURCHASING A NEW VEHICLE WHICH IS SUBJECT TO A JUFACTURER'S EXPRESS WARRANTY AND THE VEHICLE DOES NOT CONFORM TO THAT WARRANTY DURING THE RANTY PERIOD, YOU MUST GIVE WRITTEN NOTICE OF THE NONCONFORMITY, DEFECT OR CONDITION TO THE JUFACTURER OR FACTORY BRANCH DURING THE WARRANTY PERIOD BY CERTIFIED MAIL, RETURN RECEIPT UESTED, IN ORDER TO PRESERVE YOUR RIGHTS UNDER THE MARYLAND AUTOMOTIVE WARRANTY ENFORCEMENT ACT.

ICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR H THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY DEBTOR HEREUNDER.

preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section is contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any ns or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained er this contract.

No. 553-MD 04/08

**FOR OFFICE USE**

**Triangle Outdoor World**
1501 E. Patrick St.
Frederick, MD 21701
(301) 662-5722

Order Date: May 07, 2012
Order Number: 22751

Purchaser: **BILL SCHELL CATHY SCHELL**  Tel. No. 410-635-3570
Street Address: **3786 ROOP ROAD**  Town **NEW WINDSOR**  State: **MD**  County ____  Postal Code **21776**
Salesman: **Louis L Weaver**

hereby agree to purchase from you under the following conditions as specified below:

| New or Used | Year | Make/Model | Type | Stock Number |
|---|---|---|---|---|
| New | 2012 | KOMFORT 3230FRK | Fifth Wheel | 01573 |

Odometer Reading: ____  Serial Number: **47CFKMS21CP628069**  Delivery Date: ____

| | |
|---|---|
| Cash Delivered Price | 45,387.00 |
| Total Accessories | 0.00 |
| SALES TAX | 2,492.16 |
| Title Fee | 0.00 |
| Registration Fee | 248.00 |
| Feight & Prep | 800.00 |

**Service/Protection Plans**
SERVICE CONTRACT
GAP TERM:  GAP Ins.
TIRE WARRANTY
Roadside Assistance  0.00
Paint Protection  0.00
Etch  0.00

**TRADE-IN #1**
Year 1998  Make ____
Model 29RK  Odometer 0
VIN No ____
Amount Owed on Trade $ 0.00
Pay OFF To ____

| | |
|---|---|
| Service/Protection Plans Total | 0.00 |
| DMV Doc Fee | 149.00 |
| **TOTAL CASH PRICE:** | **49,076.16** |

**TRADE-IN #2**
Year ____ Make ____
Model ____ Odometer ____
VIN No ____
Amount Owed on Trade $ 0.00
Pay OFF To ____

Some states the "Trade In Allowance" does not reduce the Taxable Total.

Buyer: ____
Co-Buyer: ____
Mgr: **Anthony K Nease**  Date: **May 07, 2012**

| | |
|---|---|
| Trade-In | 4,000.00 |
| Less Pay - off | 0.00 |
| NET ALLOWANCES | 4,000.00 |
| Initial Deposit | 0.00 |
| Open Acct. or Note | 0.00 |
| Cash Due on Delivery | 0.00 |
| Dealer Rebate | 0.00 |
| **TOTAL DOWN PAYMENT** | **4,000.00** |
| **UNPAID BALANCE** | **45,076.16** |


CK SIDE
100.00


PLAINTIFF'S EXHIBIT
2



# BILL OF SALE

911 Pulaski Hwy
Joppa, MD 21085
410-679-0000

842 MD Route 3N
Gambrills, MD 21054
410-721-7777

1501 E. Patrick St
Frederick, MD 21701
301-662-5722

| PURCHASER | WILLIAM L. SCHELL | | CO-PURCHASER | CATHERINE P SCHELL | |
|---|---|---|---|---|---|
| DRIVER'S LICENSE NO. | S400-857-234-094 | D.O.B. 7-5/1955 | DRIVER'S LICENSE NO. | S-400-108-676-630 | D.O.B. 8-17-1958 |
| PH. NO. (HOME) | 410-635-3570 | (WORK) | PH. NO. (WORK) | | |
| ADDRESS | 3788 ROOP ROAD | CITY NEW WINDSOR | COUNTY | STATE MD | ZIP 21776 |
| YEAR 2012 | NEW X USED | MAKE KOMFORT | | MODEL 3230 RK | |
| SERIAL NUMBER | 47CFKMS21CP628089 | MILEAGE 0 | | COLOR TRACKSTOPPER | |
| ORDER DATE | May 11, 2012 | DELIVERY DATE 5/11/2012 | | SALESPERSON Louis Weaver | |

| DEALER & FACTORY INSTALLED OPTIONAL EQUIPMENT | | PRICE OF UNIT | | 48,337.00 |
|---|---|---|---|---|
| | | OPTIONAL EQUIPMENT | | 0.00 |
| | | SUB-TOTAL | | 48,337.00 |
| | | DMV DOC FEE | | 149.00 |
| | | SALES TAX | | 2,737.10 |
| | | TITLE, TAGS & SERVICE | | 268.00 |
| | | FREIGHT & LABOR | | 1,200.00 |
| | | EXTENDED SERVICE CONTRACT | | 3,100.00 |
| | | TIRE GUARD | | 0.00 |
| | | FABRIC GUARD | | 0.00 |
| | | GAP | | 0.00 |
| | | TOTAL CASH DELIVERED PRICE | | 55,431.10 |
| | | TRADE-IN ALLOWANCE | 2,750.00 | |
| | | LESS BALANCE DUE | 0.00 | |
| | | NET TRADE ALLOWANCE | 2,750.00 | |
| | | CASH DEPOSIT | 3,100.00 | |
| | | LESS TOTAL CREDITS | | 5,850.00 |
| BALANCE CARRIED TO OPTIONAL EQUIPMENT NEXT COLUMN | | BALANCE DUE | | |

PLAINTIFF'S EXHIBIT 3

### TRADE-IN

| YEAR | |
| MAKE | SHADOW CRUISER |
| MODEL | 285FK |
| SERIAL NUMBER | |

### TRADE-IN PAYOFF

| BANK | |
| ACCOUNT NUMBER | |
| PHONE NUMBER | |
| AMOUNT | 0.00 |

### INSURANCE INFO

| COMPANY | |
| POLICY | |
| AGENT | |
| PHONE NO. | |

### OFFICE USE ONLY

IT IS MUTUALLY UNDERSTOOD THAT THIS AGREEMENT IS SUBJECT TO NECESSARY CORRECTIONS, AND ADJUSTMENTS CONCERNING CHANGES IN NET PAYOFF ON TRADE-IN TO BE MADE AT THE TIME OF SETTLEMENT. I ACKNOWLEDGE RECEIPT OF A COPY OF THE WARRANTY. THIS ORDER COMPRISES THE ENTIRE AGREEMENT AFFECTING THIS PURCHASE AND NO OTHER AGREEMENT OR UNDERSTANDING OF ANY NATURE CONCERNING SAME HAS BEEN MADE OR ENTERED INTO, OR WILL BE RECOGNIZED. NO STATEMENT OF ANY SALESPERSON OR ANY OTHER EMPLOYEE OF THE CORPORATION SHALL BE BINDING UNLESS SUCH STATEMENTS SHALL BE EMBODIED IN WRITING IN THIS AGREEMENT.

☐ CRV   ☒ TRV   ☐ HTRV

NOT VALID UNLESS SIGNED AND ACCEPTED BY AN OFFICER OF THE COMPANY

BY _____

APPROVED, SUBJECT TO ACCEPTANCE OF FINANCING BY BANK OR FINANCE COMPANY

PURCHASER BY HIS EXECUTION OF THIS ORDER ACKNOWLEDGES THAT HE HAS READ ITS TERMS AND CONDITIONS AND HAS RECEIVED A TRUE COPY OF THIS ORDER.

SIGNED X _____ PURCHASER

SIGNED _____ CO-PURCHASER



Chesaco RV
410 679 0000


Triangle RV
301 662 5722


Happy Travelers RV
410 721 7777




HOME    INVENTORY    FINANCING    RENTALS    SERVICE    ABOUT US    CONTACT US

SIMILAR VEHICLES


2012 Forest River
SANDPIPER 346RET
$41,999
Internet Price
MSRP $60,345


2013 Forest River
ROCKWOOD ULTRA
LITE 2604
$33,635
Internet Price
MSRP $34,811


2008 Keystone
MONTANA 3075 RL
$34,311
Internet Price


2013 Crossroads
SUNSET TRAIL 29RL
$34,415
Internet Price
MSRP $40,791


2012 Jayco EAGLE
366BHS
$39,999
Internet Price
MSRP $52,445



All » New » Dutchmen » KOMFORT

All Years ▼   All Makes ▼   All Models ▼   All Condition ▼   Go

2012 Dutchmen KOMFORT 3230FRK

Internet Sales
800-231-5173
301-850-0144
✉ Contact



$38,450
Internet Price
MSRP $63,105

INTERIOR: TRACKSTOPPER     VIN #: 47CFKMS21CF628069
STOCK #: 01673

SOLD



PLAINTIFF'S EXHIBIT
4

Photos   Contact

